IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

ANGEL LEE SANCHEZ,            §
                             §
                Movant,      §
                             §
                             §   CIVIL ACTION NO. 5:19-CV-134-C-BQ
v.                           §   CRIMINAL NO. 5:18-CR-020-02-C
                             §
UNITED STATES OF AMERICA,    §
                             §
                Respondent.  §

## REPORT AND RECOMMENDATION

Movant Angel Lee Sanchez, a federal prisoner, brings this Motion Under 28 U.S.C. § 2255

to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  ECF No. 1.  The

respondent is the United States of America (Government).  On September 11, 2019, the United

States District Judge referred the matter to the undersigned magistrate judge for the limited purpose

of conducting an evidentiary hearing and filing findings of fact and conclusions of law on

Sanchez's claim "that counsel was ineffective by failing to timely file a notice of appeal." *See*

ECF No. 10.  The district judge also authorized the magistrate judge to appoint counsel "only for

the limited purposes of representing [Sanchez] at the evidentiary hearing and, if necessary, filing

any objections to the Report and Recommendation." *Id.* at n.1.

### I.    Procedural History

On February 1, 2018, the Government charged Sanchez by way of a criminal complaint.

Crim. ECF No. 1.[1]  On February 2, 2018, the Court appointed Jeff Nicholson as counsel for

Sanchez, and on February 5, Mr. Nicholson filed a notice of appearance.  Crim. ECF Nos. 9, 13.

A grand jury subsequently indicted Sanchez on four counts, including Conspiracy to Distribute

---

[1] All citations to ECF filings in the underlying criminal case, Criminal No. 5:18-CR-020-C-2, will be presented in the
form "Crim. ECF No."

and Possess with Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 846, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c). Crim. ECF No. 17. On March 21, 2018, Sanchez entered into a plea agreement with the Government in which he pleaded guilty to the drug conspiracy charge. Crim. ECF No. 52. On July 6, 2018, Senior United States District Judge Sam R. Cummings sentenced Sanchez to serve a term of 360 months in prison followed by a five-year term of supervised release. Crim. ECF Nos. 107, 110. Sanchez did not file a direct appeal; however, Sanchez timely filed the instant § 2255 motion.

Through his motion, Sanchez alleges, *inter alia*, that his trial counsel, Mr. Nicholson, provided ineffective assistance by failing to file a notice of appeal. Specifically, Sanchez contends that Mr. Nicholson "neglected or ignored [his] request to file a Notice of Appeal on [his] behalf." Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody 4, ECF No. 1.[2] Sanchez further asserts that "[i]mmediately after" sentencing he "asked Mr. Nicholson to file a Notice of Appeal," but "[i]nstead of complying . . . , Nicholson tried to convince [him] that it was useless to file a Notice of Appeal . . . ." *Id.* Despite Mr. Nicholson's advice, Sanchez states he "still insisted that [he] wanted to appeal the sentence . . . ." *Id.* According to Sanchez, he had his common-law wife, Paige Hinojosa, call Mr. Nicholson "to inform him to make sure he filed a Notice of Appeal on [Sanchez's] behalf." *Id.* at 5.

On September 9, 2019, the Government filed its response and supporting appendix opposing Sanchez's motion. ECF Nos. 8, 9. With respect to Sanchez's allegation that Mr. Nicholson failed to file a notice of appeal, the Government requested an evidentiary hearing. ECF No. 8, at 6–7. The district judge therefore referred this matter to the undersigned for the limited

---

[2] Page citations to Sanchez's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

purpose of conducting an evidentiary hearing and filing findings of fact and conclusions of law regarding Movant's claim. ECF No. 10.

In accordance with the order of reference, the magistrate judge appointed counsel for the limited purpose of representing Sanchez on his claim that defense counsel failed to file a notice of appeal as instructed and conducted an evidentiary hearing on January 28, 2020. ECF Nos. 12, 13, 16. Both parties were represented by counsel, and the following individuals testified at the hearing: (1) Sanchez; and (2) Mr. Nicholson.

At the evidentiary hearing, Sanchez stated that his common-law wife Paige Hinojosa signed an affidavit concerning her alleged involvement in the events giving rise to Sanchez's claim. Neither party produced a copy of the affidavit at the hearing or otherwise acknowledged having seen it, and Sanchez testified that he did not know what had become of it. On March 9, 2020, however, it came to the undersigned's attention that Hinojosa's affidavit had been docketed on August 6, 2019 (approximately one month after the § 2255 filing), in the underlying criminal case. *See* Crim. ECF No. 135. The Clerk subsequently docketed the affidavit in this civil action (ECF No. 23), and the Court directed the parties to file responses concerning the affidavit and its impact, if any, on Sanchez's claim. ECF No. 24. On March 13 and 16, 2020, respectively, the Government and Sanchez filed their responses, and the undersigned has considered them herein. ECF Nos. 26, 27.

Based upon the testimony and evidence presented at the hearing, a review of Court records related to this matter, and applicable law, the undersigned submits the following findings of fact and conclusions of law.

3

## II.    Summary of Testimony and the Affidavit

### A.  Summary of Testimony

Both Sanchez and Mr. Nicholson testified at the evidentiary hearing. Sanchez testified that there were "ups and downs" during Mr. Nicholson's representation. Sanchez affirmed that he entered into a plea agreement in which the Government agreed to charge him with a single count of drug conspiracy, and in exchange, Sanchez waived his appellate rights, except in limited circumstances. Sanchez acknowledged that he understood the appeal waiver and, during his rearraignment, similarly accepted that an appeal waiver was part of the agreement. Sanchez and Mr. Nicholson met to discuss the Presentence Report (PSR), which contained a guideline range of 360 months to life imprisonment. On July 6, 2018, the district judge sentenced Sanchez to 360 months in prison. Sanchez averred that immediately after sentencing, while in the courtroom, he asked Mr. Nicholson to file a notice of appeal. According to Sanchez, Mr. Nicholson responded that he would come visit him in jail. Sanchez claims that when he returned to jail post-sentencing, he called Ms. Hinojosa,[3] and informed her that he had asked Mr. Nicholson to file an appeal.

Sanchez further testified that, on an unknown date, Ms. Hinojosa again called Mr. Nicholson to confirm that Nicholson planned to file a notice of appeal. But Sanchez also acknowledged that on July 16, 2018, ten days after sentencing, Mr. Nicholson visited him in jail and during that meeting Sanchez signed a "waiver of appeal."[4] The Post-Sentencing Appeal Waiver memorialized Sanchez's decision not to file a direct appeal. Sanchez claims, however, that between July 16 (the day he signed the Post-Sentencing Appeal Waiver) and July 20, 2018,

---

[3] Ms. Hinojosa did not testify at the evidentiary hearing. Sanchez did submit, however, an affidavit purportedly completed by Ms. Hinojosa. *See* ECF No. 23.

[4] The form is entitled "Waiver of Appeal." Government Ex. 2. To avoid confusion with the appeal waiver contained in the plea agreement, the Court will refer to this form as the "Post-Sentencing Appeal Waiver."

he changed his mind. He therefore asked Ms. Hinojosa to call Mr. Nicholson and inform him that Sanchez wanted to appeal. Sanchez stated that it was not until months later, when he "started looking into [his] 2255," that he learned a notice of appeal had not been filed.

Mr. Nicholson testified that he reviewed with Sanchez the plea agreement several times, and Sanchez appeared to understand the agreement in its entirety, including the appeal waiver. Mr. Nicholson also stated that, after receiving the PSR, he went over the entire report with Sanchez. Mr. Nicholson stated that Sanchez was initially upset by the sentencing guideline range, but that after a second meeting, Sanchez understood the district judge would sentence him, at a minimum, to a prison term of 360 months. According to Mr. Nicholson, Sanchez did not ask him to file an appeal immediately after the July 6, 2018, sentencing, but Mr. Nicholson agreed that he told Sanchez he would come visit him in jail upon Mr. Nicholson's return from vacation. Mr. Nicholson confirmed that he visited Sanchez in jail on July 16, 2018, and took with him two forms: a notice of appeal and the Post-Sentencing Appeal Waiver. After discussing whether an appeal would be in Sanchez's best interest, Mr. Nicholson stated that Sanchez signed the Post-Sentencing Appeal Waiver, memorializing his decision not to appeal. Mr. Nicholson averred that Sanchez was concerned any appeal might re-open the possibility that he could face sentencing liability under 18 U.S.C. § 924(c)—something that Sanchez had wanted to avoid from the "get-go."

Mr. Nicholson further testified that although he remembers Ms. Hinojosa calling to discuss something "along [the] lines" of an appeal, he did not remember the date she called. But Mr. Nicholson also stated that he was "100 percent certain," even after speaking with Ms. Hinojosa, that Sanchez did not want to appeal. Mr. Nicholson specified that he did not "remember thinking that [Sanchez] wanted to change his mind."

### B. Ms. Hinojosa's Affidavit

In her affidavit, Ms. Hinojosa states that "[i]mmediately, after . . . Sanchez was sentenced on July 6, 2018, [she] personally spoke to Mr. Jeff Nicholson to make sure that Mr. Nicholson understood that Sanchez wanted him to file a Notice of Appeal . . . ." Decl. of Paige Hinojosa 2 ¶ 5, ECF No. 23 [hereinafter Hinojosa Decl.]. According to Ms. Hinojosa, "Mr. Nicholson assured [her] that he had spoken about the appeal process with . . . Sanchez and was aware of his intentions to appeal the case." *Id.* at 2 ¶ 6. Ms. Hinojosa claims that "[t]his conversation took place within 7-10 days after the sentence and based on that conversation, [she] was left with the impression that Mr. Nicholson would honor . . . Sanchez's request to appeal the case." *Id.*

Citing Ms. Hinojosa's failure to testify at the evidentiary hearing and its inability to cross-examine her, the Government maintains that the Court should disregard Ms. Hinojosa's affidavit because it is inadmissible hearsay. Government Resp. 2–3, ECF No. 26. Sanchez does not dispute that the affidavit constitutes hearsay, but argues instead that it is "instructive on SANCHEZ'S never wavering desire to have an appeal filed on his case by Mr. Nicholson." Pet'r's Resp. 1, ECF No. 27. Sanchez further avers that Ms. Hinojosa's affidavit "instructs on Mr. Nicholson's intent, albeit failed, to file the Notice of Appeal for [him]." *Id.*

"A 28 U.S.C.A. [§] 2255 proceeding for challenging collaterally the validity of a federal conviction is . . . a formal procedure with all of the usual accouterments of a civil trial." *United States v. Francischine*, 512 F.2d 827, 829 (5th Cir. 1975) (explaining that issues of fact are "resolved under the Federal Rules of Evidence"); *Bowe v. United States*, Nos. CV408–033, CR404–308, 2009 WL 2899107, at *9 (S.D. Ga. May 20, 2009) ("Habeas cases thus require, at the end of the day, admissible (non-hearsay) evidence."). Because Ms. Hinojosa did not testify at the hearing and the Government did not have an opportunity to cross-examine her, the Court agrees

that the affidavit constitutes hearsay to the extent it is offered for the truth of what Ms. Hinojosa allegedly discussed with Mr. Nicholson. *See, e.g.*, Fed. R. Evid. 801(c); *United States v. Britton-Harr*, CV. No. 2:15–360, 2017 WL 3648227, at \*9 (S.D. Tex. Aug. 21, 2017) (explaining that a letter from a person who "interviewed unspecified witnesses who supported [petitioner's] version of events" was "hearsay, not evidence, and [could not] be considered"); *Casarez v. United States*, Civil Action Number M-03-022, 2006 WL 8445851, at \*7–8 (S.D. Tex. Sept. 13, 2006) (agreeing with the government that affidavits from petitioner's wife, who did not testify at the evidentiary hearing, were inadmissible hearsay).

But even if the Court considers the affidavit's substance, it provides little support for Sanchez's claim. Construing Ms. Hinojosa's statements most favorably, she asserts that she (1) spoke with Mr. Nicholson "immediately" after sentencing regarding Sanchez's desire to appeal; and (2) spoke with Mr. Nicholson a second time approximately "7-10 days after the sentence[ing]," that Mr. Nicholson "was aware of [Sanchez's] intentions to appeal the case," and she "was left with the impression that Mr. Nicholson would honor . . . Sanchez's request to appeal the case." Hinojosa Decl. 2 ¶¶ 6, 7. The key fact in this case, as analyzed below, is *when* Ms. Hinojosa called Mr. Nicholson—before or after Sanchez signed the Post-Sentencing Appeal Waiver. In her affidavit, Ms. Hinojosa makes no reference to Sanchez's signing of the Post-Sentencing Appeal Waiver nor does she indicate that Sanchez had a change of heart regarding same. *See id.* Indeed, Sanchez merely asserts that the affidavit shows his "never wavering desire to have an appeal filed on his case by Mr. Nicholson." Pet'r's Resp. 1. But Sanchez and Mr. Nicholson *both* testified that Sanchez signed the Post-Sentencing Appeal Waiver ten days after sentencing plainly indicating his desire *not* to appeal. The Court finds that Ms. Hinojosa's failure to acknowledge the Post-Sentencing Appeal Waiver in her affidavit proves fatal to Sanchez's

contention that he asked her to inform Mr. Nicholson he had changed his mind after signing the waiver. Moreover, Mr. Nicholson testified that it is his practice not to take instructions, such as whether to pursue an appeal, from family members—his client's wishes control. For these reasons, the Court would assign Ms. Hinojosa's affidavit little, if any, weight, even if it was admissible.

### III.    Findings of Fact

1. On February 1, 2018, the Government charged Sanchez by way of a Complaint. Crim. ECF No. 1.

2. The United States Magistrate Judge appointed Mr. Nicholson on February 2, 2018, to represent Sanchez on the criminal charge. Crim. ECF No. 9.

3. Mr. Nicholson has been licensed to practice law in Texas since 1990 and has accepted federal criminal appointments under the Criminal Justice Act for many years.

4. Mr. Nicholson primarily practices criminal law, handling a mixture of state and federal criminal cases.

5. On February 14, 2018, the grand jury returned an indictment against Sanchez, charging him with four counts, including Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 846, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c).[5] Crim. ECF No. 17.

6. Mr. Nicholson negotiated a plea agreement under which Sanchez would plead guilty to a single count of conspiracy to distribute 500 grams or more of methamphetamine. In exchange, Sanchez agreed to waive his right to appeal his conviction and sentence, except

---

[5] Under § 924(c)(1)(A)(i), the district judge "shall, in addition to the punishment provided for" a drug trafficking crime (e.g., conspiracy under § 846) impose a minimum five-year consecutive sentence for the gun charge, i.e., if Sanchez had been convicted under § 846 *and* § 924(c), his sentence would have been extended by a minimum of five years.

under limited circumstances, including: (1) a direct appeal of (a) a sentence exceeding the statutory maximum punishment, or (b) an arithmetic error at sentencing; (2) a challenge to the voluntariness of Sanchez's plea of guilty or the appeal waiver; and (3) a claim of ineffective assistance of counsel. *See* Crim. ECF No. 52.

7.   Mr. Nicholson reviewed the plea agreement with Sanchez; however, Sanchez did not agree to the plea that day because he wanted to discuss it with his family. Mr. Nicholson returned to the jail at least one additional time, to discuss the plea with Sanchez, and on March 20, 2018, Sanchez signed the plea agreement.[6] According to Mr. Nicholson, Sanchez appeared to understand the appeal waiver contained in the plea agreement.

8.   On March 21, 2018, Sanchez pleaded guilty to Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or more of Methamphetamine. Crim. ECF No. 60.[7]

9.   The probation officer prepared the PSR, which contained a guideline sentencing recommendation of 360 months to life imprisonment. Crim. ECF No. 88. Mr. Nicholson met with Sanchez at the jail to go over the PSR's contents. Sanchez was upset with the sentencing range. Recognizing that Sanchez potentially faced a long sentence, Mr. Nicholson returned to the jail a few days later to again review the PSR with Sanchez. Sanchez was aware of the information contained in the PSR—and the fact that the district judge might sentence him to 360 months imprisonment, at a minimum—prior to sentencing.

---

[6] Mr. Nicholson's affidavit, which the Government submitted in support of its response to Sanchez's motion, contains specific dates and additional information. *See* ECF No. 9. At the evidentiary hearing, however, other than where specifically noted, Mr. Nicholson did not reference dates in detailing his interactions with Sanchez. The findings of fact set forth herein are based on Mr. Nicholson's hearing testimony and not information supplied through his affidavit.

[7] Sanchez's testimony at the habeas hearing concerning the plea agreement's appeal waiver was confusing, but he ultimately agreed that he understood the appeal waiver when he signed it. Of more significance is the fact that, during the plea colloquy, Sanchez stated under oath to this Court not only that he understood the plea agreement contained an appellate waiver, but that he also understood its terms. ECF No. 136, at 14-15.

10. In accordance with Sanchez's request, Mr. Nicholson filed an objection to the PSR based on a two-level sentencing enhancement for possessing a firearm. Crim. ECF Nos. 94, 95. In response, the probation officer filed an Addendum, further amplifying the need for the enhancement. Crim. ECF No. 104. The district court ultimately overruled Sanchez's objection, adopting the PSR and the Addendum. Crim. ECF Nos. 104, 110.

11. On July 6, 2018, Senior United States District Judge Sam R. Cummings sentenced Sanchez. At sentencing, Mr. Nicholson asked Judge Cummings to sentence Sanchez at the bottom of the guideline range, i.e., 360 months. Judge Cummings sentenced Sanchez to serve a term of 360 months in prison (which was in fact the minimum possible sentence under the guidelines, as set forth in the PSR), to be followed by a five-year term of supervised release. Crim. ECF No. 110. Judge Cummings orally advised Sanchez that he had a right to appeal and that if he wished to appeal his sentence, he must file a notice of appeal within fourteen days.

12. Immediately after sentencing, while in the courtroom, Sanchez and Mr. Nicholson spoke, but their testimony concerning this conversation conflicts. Sanchez testified that he asked Mr. Nicholson to file a notice of appeal on his behalf, and Mr. Nicholson responded that he would come visit Sanchez in jail. Mr. Nicholson, on the other hand, stated that Sanchez did not ask him to file an appeal during that conversation. Mr. Nicholson did confirm, however, that he told Sanchez he would come visit him in jail upon returning from vacation. The Court credits Mr. Nicholson's testimony, based primarily on Sanchez's written instructions provided ten days later, and finds that Sanchez did not clearly instruct him to file a notice of appeal during their post-sentencing discussion in the courtroom.

13. Consistent with his practice following a client's sentencing, Mr. Nicholson returned to his office after the July 6, 2018, sentencing and memorialized the events in a letter dated and mailed the same day. Government Ex. 1. Mr. Nicholson addressed various aspects of the sentencing (including computation of criminal history and offense level, and comparison to a co-defendant's sentence) and assessed Sanchez's prospects for a possible appeal:

> I came back to [the] office and looked into whether or not I believe we could improve the sentence by filing an appeal and it is my opinion that an appeal will not benefit you.
>     . . . .
> I am going on vacation but will file an appeal if you wish. Again, I do not believe it will do anything to change the ultimate outcome – other than possibly see you receive an additional five months; but the decision is yours.

*Id.*

14. On July 16, 2018—ten days after sentencing, and within the fourteen-day period for filing an appeal—Mr. Nicholson visited Sanchez at the jail. Mr. Nicholson brought two forms with him: a notice of appeal and the Post-Sentencing Appeal Waiver. During this visit, Mr. Nicholson conferred with Sanchez about his appellate rights and whether an appeal would be in his best interest. They also discussed potential § 924(c) issues—i.e., that appealing the two-level enhancement for possessing a firearm might also reopen the possibility that Sanchez could face § 924(c) liability. Ultimately, Sanchez decided not to appeal to avoid the Government's or the Court's reconsideration of the § 924(c) count, avoidance of which was one of Sanchez's main concerns during the plea-bargaining process.

15. Sanchez's decision to forego an appeal is memorialized in the signed Post-Sentencing Appeal Waiver, which states as follows:

> I have been advised of my right to appeal from the judgment and sentence issued by the Court.

11

I further have been advised that any such appeal must be filed within 14 days from the date of the filing of the judgment.

I further have been advised that I have the right to appointed counsel on appeal if I cannot afford to hire counsel and that I will not be required to pay any fee for the appeal, and will not be charged for the preparation of the necessary transcripts.

I fully discussed with my attorney the potential issues for appeal.

**I AM HEREBY ADVISING MY ATTORNEY THAT I DO NOT WISH TO APPEAL.**

My waiver of my right to appeal is done freely and voluntarily. I understand my attorney will take no further action on my case and that his/her representation of me is completed.

Government Ex. 2. Sanchez's signature follows the foregoing statements, and Mr. Nicholson also signed the form. *Id.* Sanchez did not sign the notice of appeal form that Mr. Nicholson brought to the jail. After their July 16, 2018, meeting, Mr. Nicholson understood that Sanchez had no desire to appeal.

16. Sanchez avers that after signing the Post-Sentencing Appeal Waiver, he changed his mind and decided to appeal. Sanchez, however, never directly contacted Mr. Nicholson to inform Nicholson of the change. Instead, Sanchez testified that he called Ms. Hinojosa and asked her to so notify Mr. Nicholson. Sanchez contends that he directed Ms. Hinojosa to tell Mr. Nicholson "not to turn this [Post-Sentencing Appeal Waiver] in." In response to a question on direct examination asking whether Sanchez "ever personally call[ed] you or contact[ed] you to change that instruction," Mr. Nicholson responded: "I don't remember—it seems like I got a call from his wife or girlfriend . . . about something along

those lines."[8] Regardless of the timing of the call, Mr. Nicholson nevertheless averred that whenever he spoke with Ms. Hinojosa, he "[did not] remember thinking that [Sanchez] wanted to change his mind, at all." Mr. Nicholson testified: "I am 100 percent certain, from the get-go and through this date, that [Sanchez] did not want to appeal this case" because Sanchez was concerned about the § 924(c) ramifications. Mr. Nicholson did not believe the conversation with Ms. Hinojosa provided any basis for reconsidering Sanchez's earlier instructions to Nicholson that he did not want to appeal. Mr. Nicholson often receives calls from the family members of clients, but the family members' wishes frequently conflict with those of his clients, in part because the client tells the family something different than what counsel and the client have discussed. Mr. Nicholson reiterated that his decisions are ultimately guided by the client's, not the family's, desires. The Court credits Mr. Nicholson's testimony in this regard and finds that, even assuming Ms. Hinojosa called between July 16 and 20, 2018—i.e., after Sanchez executed an express written directive not to pursue an appeal—he did not clearly communicate to Mr.

---

[8] Sanchez, as the party with the burden of proof, has failed to present sufficient evidence concerning the timeline for these events. Mr. Nicholson testified on cross examination that he "remember[ed] her [Hinojosa] calling and saying they wanted to appeal and I remember going back out *ten days later* and going over it [the waiver] with him." (emphasis added). Such timing would indicate Ms. Hinojosa's call, expressing a desire to appeal, occurred *prior* to Mr. Nicholson's meeting with Sanchez on the 16th and his subsequent execution of the written waiver. Mr. Nicholson stated on further cross examination, however, that he could not remember whether Ms. Hinojosa called before July 16, or between July 16 and July 20, when the appeal deadline expired. The undersigned finds, based on Mr. Nicholson's initial and more specific testimony, that Ms. Hinojosa's call concerning a possible appeal occurred prior to the 16th, i.e., the date Sanchez signed the Post-Sentencing Appeal Waiver. Although the Court considers it inadmissible, Ms. Hinojosa's affidavit also impliedly supports this conclusion—i.e., that she called *before* Mr. Nicholson visited Sanchez in jail ("immediately" and within "7-10 days" of sentencing)—considering that her affidavit does not reference the Post-Sentencing Appeal Waiver or expressly state that Sanchez had a change of heart after signing the waiver. The undersigned therefore finds that Sanchez has failed to establish by a preponderance of the evidence that he communicated to Mr. Nicholson a desire to appeal *after* formally, and in writing, waiving such right. As set forth in Section IV.A. herein, such a finding precludes the relief sought by Sanchez.

To cover all the bases, however, this Report and Recommendation also examines whether Sanchez can obtain relief under § 2255 assuming, without this Court finding, that Mr. Nicholson received Ms. Hinojosa's call *after* Sanchez executed the Post-Sentencing Appeal Waiver, i.e., sometime between the 16th and the 20th.

Nicholson, directly or through Ms. Hinojosa, a desire to appeal.[9] The fact that the record contains no evidence demonstrating Sanchez attempted to follow up with either Ms. Hinojosa or Mr. Nicholson as to whether an appeal was actually filed, or its status, provides further justification for making this credibility determination in Mr. Nicholson's favor.[10]

17. Sanchez further asserts that he did not understand the Post-Sentencing Appeal Waiver form and was not "in [his] right state of mind" when he signed it. But Sanchez also testified that after signing the form, he changed his mind and directed Ms. Hinojosa to so notify Mr. Nicholson. The Court finds Sanchez's statement that he did not understand the Post-Sentencing Appeal Waiver conflicts with his testimony that he changed his mind and took steps to alter course—i.e., by asking Ms. Hinojosa to speak with Mr. Nicholson about filing an appeal. The Court therefore gives no weight to Sanchez's testimony that he did not understand the Post-Sentencing Appeal Waiver form when he signed it on July 16, 2018.[11]

18. At no time either prior to or within fourteen days after sentencing did Sanchez clearly instruct Mr. Nicholson to file a notice of appeal on his behalf.

19. Sanchez did not file a direct appeal.

---

[9] The Court reaches this finding in part because Ms. Hinojosa did not testify at the hearing, and because Sanchez presented no evidence, other than inadmissible hearsay statements, as to the substance of Ms. Hinojosa's conversation with Mr. Nicholson. From Sanchez's perspective the conflicting evidence shows, at best, that Ms. Hinojosa called and spoke to Mr. Nicholson sometime after July 16, 2018, and discussed something "along [the] lines" of wanting to appeal, i.e., "they wanted to appeal." Such evidence does not demonstrate whether this desire was that of Sanchez, Ms. Hinojosa, Sanchez's family, or some other unidentified parties, *and* it was in direct contradiction of written instructions Mr. Nicholson had just personally received from Sanchez. Without more, e.g., evidence of a phone call or written instructions (e.g., a letter) directly from Sanchez to Mr. Nicholson showing a change of heart, or a more detailed account of Ms. Hinojosa's conversation with Mr. Nicholson, Sanchez has failed to meet his burden of proof on this important point.

[10] Sanchez waiting over a year after sentencing, i.e., until July 9, 2019, to file a habeas petition alleging ineffective assistance for failure to file a notice of appeal, lends additional support to this conclusion.

[11] This finding is simply a credibility determination based on Sanchez's conflicting responses—it does not constitute an affirmative finding that the latter statement is true.

14

## IV.     Conclusions of Law

The Sixth Amendment guarantees criminal defendants the right to "reasonably effective" legal assistance, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish a claim for ineffective assistance of counsel, a movant must satisfy the "now-familiar" *Strickland* test and demonstrate that: (1) his attorney's representation "fell below an objective standard of reasonableness"; and (2) he was prejudiced by his counsel's deficient performance. *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (quoting *Strickland*, 466 U.S. at 687–88). A movant's failure to satisfy either prong of the *Strickland* test is generally fatal to his claim. *Strickland*, 466 U.S. at 700; *see United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014).

### A.     Sanchez did not instruct Mr. Nicholson to file a notice of appeal.

The *Strickland* test applies to Sanchez's claim "that counsel was constitutionally ineffective for failing to file a notice of appeal." *Flores-Ortega*, 528 U.S. at 477. An attorney's failure to file a requested notice of appeal "is *per se* ineffective assistance of counsel, with or without a showing that the appeal would have merit." *United States v. Tapp*, 491 F.3d 263, 265–66 (5th Cir. 2007) (citing *Flores-Ortega*, 528 U.S. at 483–86) (noting that the *Flores-Ortega* standard applies "even where a defendant has waived his right to direct appeal and collateral review"). Thus, if a movant establishes by a preponderance of the evidence that he asked his attorney to file a notice of appeal, and his attorney did not, prejudice is presumed. *Id.* at 266. An attorney's "duty to perfect an appeal on behalf of a convicted client," however, "does not arise on conviction . . . ." *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993). Instead, the client must *clearly communicate* to his attorney, in a timely manner, that he wants to appeal. *See id.* (affirming denial of movant's ineffective assistance of counsel claim where movant failed to communicate to counsel his desire to appeal his criminal conviction); *see also United States v. Rivas*, 450 F. App'x

15

420, 424 (5th Cir. 2011) (citing *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999)) (explaining that the Fifth Circuit has "avoided a bright line rule requiring criminal defense counsel to perfect an appeal in every criminal conviction").

Here, Sanchez has failed to demonstrate by a preponderance of the evidence that he instructed Mr. Nicholson to file an appeal. The Court credits the testimony of Mr. Nicholson who testified that Sanchez did not instruct him in the courtroom, post-sentencing, to file an appeal. *See United States v. Brown*, 727 F.3d 329, 341 (5th Cir. 2013) (citing *United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996)) (noting that a fact-finder is "well positioned to evaluate . . . credibility and [is] entitled to reject [witness] testimony as self-serving and inconsistent with the balance of the evidence presented"); *see also Baumgartner v. United States*, No. 2:09-CV-015, 2011 WL 3652335, at *5 (N.D. Tex. Aug. 3, 2011) (weighing attorney's testimony over that of defendant in part because attorney is an officer of the court and defendant "has much more to gain or lose by the outcome of [his] § 2255 motion"), *R. & R. adopted by* 2011 WL 3678674 (N.D. Tex. Aug. 19, 2011).

In addition, and most telling, is Sanchez's subsequent express written instruction, as reflected by the signed Post-Sentencing Appeal Waiver, to Mr. Nicholson *not* to file an appeal. Government Ex. 2. "[A] defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe*, 528 U.S. at 477. The district court sentenced Sanchez on July 6, 2018. The appeal deadline therefore expired July 20, 2018. Sanchez has presented insufficient evidence showing that between July 16 (the day he signed the Post-Sentencing Appeal Waiver) and July 20, he told Mr.

Nicholson that he changed his mind and clearly communicated a desire to appeal.[12]  Sanchez's last instruction to Mr. Nicholson—as evidenced by the signed Post-Sentencing Appeal Waiver—was that he did not want to appeal. *See, e.g.*, *Logan v. United States*, Civil Action No. L-06-155, 2007 WL 2220510, at *3 (S.D. Tex. July 27, 2007) (explaining that the notice of non-appeal signed by movant clearly indicated his desire not to appeal); *Urbina-Espinoza v. United States*, No. CIVA 5:05CV245, 2006 WL 2981189, at *1 (S.D. Tex. Oct. 12, 2006) (observing that movant "filed a notice of non-appeal, which expressly reflects [his] decision to forgo a direct appeal, and confirms that he made that decision after discussing the matter with his attorney" thereby necessitating dismissal of his ineffective assistance claim).   While Nicholson's testimony regarding Ms. Hinojosa's phone call provides some indirect evidence of a possible change of heart by Sanchez, the undersigned does not find this evidence sufficient to satisfy Sanchez's burden, particularly in light of other uncontradicted evidence in the record:  (1) Sanchez himself, after *twice* waiving his appellate rights through a written plea agreement and Post-Sentencing Appeal Waiver, did not write or call Mr. Nicholson directly to change those instructions; (2) Mr. Nicholson's experience counselled that family members frequently express opinions or instructions about his clients' cases reflecting *their* desires rather than those of his clients; and (3) the purported change of heart expressed by Ms. Hinojosa ran counter to Mr. Nicholson's understanding, obtained previously by communication directly from his client, that Sanchez wanted to avoid the very real possibility of receiving a consecutive § 924(c) gun count sentence if he appealed.

---

[12] The Court does not construe Ms. Hinojosa's phone call to Mr. Nicholson as a *clear* conveyance of *Sanchez's* desire to appeal.  First, Ms. Hinojosa did not testify at the evidentiary hearing.  Relatedly, there is no competent evidence before the Court demonstrating the substance of Ms. Hinojosa's statements to Mr. Nicholson, other than Mr. Nicholson's general recollection concerning same and Ms. Hinojosa's inadmissible affidavit.  As noted earlier, even assuming Ms. Hinojosa called sometime after July 16, 2018, and discussed something "along [the] lines" of wanting to appeal," i.e., "*they* wanted to appeal," such evidence does not demonstrate *who* wanted to appeal (Sanchez, Ms. Hinojosa, Sanchez's family, etc.) or, more importantly, that Sanchez had changed his mind, particularly where he had just provided written instructions to the contrary to Mr. Nicholson.

In sum, the undersigned finds that Sanchez has failed to demonstrate by a preponderance of the evidence that he clearly asked Mr. Nicholson to appeal his criminal sentence. Accordingly, the district court should not grant Sanchez relief on this basis.

**B.      Sanchez has not shown that Mr. Nicholson failed to fully satisfy his duty to consult regarding an appeal, or that any such failure prejudiced Sanchez.**

Although the Court finds that Sanchez has not demonstrated he clearly directed Mr. Nicholson to file a notice of appeal, the Court also considers whether Sanchez has shown that Mr. Nicholson failed to consult with him regarding an appeal. The Court concludes Sanchez has not.

Where a movant does not specifically direct his attorney to file an appeal, as in this case, the Court may still have an obligation to determine whether his attorney failed to adequately consult with him regarding an appeal. *See, e.g.*, *Flores-Ortega*, 528 U.S. at 478 ("In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal."); *Lopez-Lara v. United States*, Civil Action No. B-13-178, 2014 WL 11531891, at *11 (S.D. Tex. Aug. 7, 2014) (explaining that the court was required to determine whether movant's attorney had a duty to consult regarding an appeal, despite movant's failure to ask his attorney to file an appeal), *R. & R. adopted by* 2014 WL 11531892 (S.D. Tex. Sept. 4, 2014). "In this context, 'consult' means that counsel tendered advice about the advantages and disadvantages of appealing and made a 'reasonable effort to discover' the defendant's wishes on the issue." *United States v. Calderon*, 665 F. App'x 356, 364 (5th Cir. 2016). "[T]here is no mechanical rule that consultation must always follow sentencing, but counsel's cursory discussion *before* sentencing [does] not compensate for the complete failure to mention the possibility of appeal after sentencing." *Esquivel v. United States*, No. 3:15-cv-553-

D-BN, 2016 WL 6902150, at *5 (N.D. Tex. Oct. 3, 2016) (quoting *United States v. Pham*, 722 F.3d 320, 324 n.16 (5th Cir. 2013)) (emphasis in original) (internal quotation marks omitted), *R. & R. adopted by* 2016 WL 6902183 (N.D. Tex. Nov. 21, 2016). Additionally, the Supreme Court has noted that "district courts would find a duty to consult 'in the vast majority of cases.'" *Pham*, 722 F.3d at 324.

The first *Strickland* prong, known as the "performance" prong, "begins with the question whether counsel 'consulted' with the defendant regarding an appeal." *Id.* at 323 (quoting *Flores-Ortega*, 528 U.S. at 478). Where an attorney fails to consult with a client regarding an appeal, "then the question is whether that failure was unreasonable because it breached the duty to consult." *Id.* at 324; *see also Flores-Ortega*, 528 U.S. at 478 (explaining that even where an attorney "has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance"). An attorney "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 480). The court must assess an attorney's duty to consult "in light of 'all the information counsel knew or should have known.'" *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). "Whether the conviction followed a trial or a guilty plea is 'highly relevant,' although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

When an attorney breaches his constitutionally-imposed duty to consult, the court will not presume prejudice. *Hurrelbrink v. United States*, CASE NO. 3:15-CV-3978-L-BK, 2017 WL 1683663, at *2 (N.D. Tex. Mar. 27, 2017) (citing *Flores-Ortega*, 528 U.S. at 484), *R. & R. adopted by* 2017 WL 1649965 (N.D. Tex. May 2, 2017); *Esquivel*, 2016 WL 6902150, at *4. Instead, "under *Flores-Ortega*, a defendant satisfies the second *Strickland* prong [the "prejudice" prong] if he shows 'that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" *Pham*, 722 F.3d at 324 (quoting *Flores-Ortega*, 528 U.S. at 484). "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which requires a "substantial," not just "conceivable" likelihood of a different result. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 694). "[E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Flores-Ortega*, 528 U.S. at 485. To establish prejudice, however, a defendant need not "demonstrate that his hypothetical appeal might have had merit . . . ." *Id.* at 486. The Fifth Circuit has held that "*Flores-Ortega* applies 'even where a defendant has waived his right to direct appeal and collateral review.'" *Bejarano*, 751 F.3d at 285 (quoting *Tapp*, 491 F.3d at 266).

### 1. *Sanchez did not reasonably demonstrate to Mr. Nicholson that he wanted to appeal.*

Mr. Nicholson indisputably consulted with Sanchez on July 16, 2018, *after* he received a 360-month sentence and despite Sanchez previously waiving most of his appellate rights in the plea agreement.[13] During that meeting, Mr. Nicholson conferred with Sanchez about his appellate

---

[13] "Consulting is a term of art that means advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Pham*, 722 F.3d at 323 (internal quotation marks omitted).

rights and whether an appeal would be in his best interest.  Specifically, they weighed appealing the two-level sentencing enhancement for possessing a firearm against the possibility that any successful appeal might once again expose Sanchez to § 924(c) liability.  Ultimately, Sanchez decided not to appeal because he did not want the Government or the Court to reconsider his liability under § 924(c).[14]  "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."  *Pham*, 722 F.3d at 323–24 (quoting *Flores-Ortega*, 528 U.S. at 478).

The sole evidence Sanchez puts forth in support of his claim that Mr. Nicholson disregarded his express instruction following the July 16 consultation is that Ms. Hinojosa called Mr. Nicholson sometime after the meeting and purportedly told Mr. Nicholson that Sanchez wanted to appeal.[15]  But Mr. Nicholson averred that, after speaking with Ms. Hinojosa, he "[did not] remember thinking that [Sanchez] wanted to change his mind."  Mr. Nicholson stated that he often receives calls from clients' family members expressing desires that conflict with those of his clients.  In this case, Mr. Nicholson was "100 percent certain, from the get-go and through this date, that [Sanchez] did not want to appeal this case" because Sanchez was concerned about potential § 924(c) ramifications.

The "performance inquiry [focuses on] whether counsel's assistance was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688.  The undersigned acknowledges

---

[14] The undersigned previously detailed this concern in note 5 *supra*—in short, Sanchez did not want to be sentenced under § 924(c), which would have required imposition of an additional consecutive five-year sentence for the gun count.

[15] As explained in note 8 above, the evidence supports a finding, which the Court has made, that Ms. Hinojosa called before July 16, 2018; nevertheless, the Court also analyzes whether Sanchez has satisfied his burden for obtaining relief under § 2255 assuming that Mr. Nicholson received Ms. Hinojosa's call *after* Sanchez executed the Post-Sentencing Appeal Waiver, i.e., sometime between July 16 and 20.

the record contains evidence that at least raises the question of whether Ms. Hinojosa called Mr.

Nicholson between July 16 and 20, 2018, stating that "they wanted to appeal," and thereby possibly

giving rise to the question of whether the call triggered an additional duty on Mr. Nicholson's

behalf to further inquire into Sanchez's wishes.  Even assuming such facts, however, the Court

still resolves this admittedly close question in favor of denying § 2255 relief.  "[I]in light of all the

circumstances" (*id.* at 690)—including Mr. Nicholson's firm understanding that from the "get-go"

Sanchez did not want to appeal so as avoid potential § 924(c) liability, as well as the July 16, 2018,

consultation about a possible appeal and Sanchez's ultimate disavowal of a desire to appeal (as

confirmed in the written Post-Sentencing Appeal Waiver)—even if Ms. Hinojosa called between

July 16 and 20, Mr. Nicholson reasonably believed Sanchez did not want to appeal.  *See, e.g.*, *Ellis*

*v. Mullin*, 56 F. App'x 858, 864 (10th Cir. 2003) ("When we consider whether an attorney was

ineffective, our focus is on what the attorney knew at the time."); *see also United States v. Casarez*,

304 F. App'x 325, 2008 WL 5381482, at *1 (5th Cir. Dec. 23, 2008) (explaining that movant failed

to reasonably demonstrate to counsel he was interested in appealing where, although movant "was

upset about sentencing matters before and after the sentencing hearing, [movant] did not express

to counsel any interest in appealing the sentence either when [movant] spoke to counsel after the

sentencing hearing or when [movant] called counsel's office"); *Flores-Diaz v. United States*, 516

F. Supp. 2d 818, 830 (S.D. Tex. 2007) (rejecting movant's ineffective assistance claim where he

signed a notice of non-appeal and therefore his trial counsel could not "be faulted for not filing a

notice of appeal since [movant] expressly conveyed he was not pursuing an appeal").  The Court

declines to now question that reasonable belief with "the distorting effects of hindsight."[16] *Strickland*, 466 U.S. at 689.

Sanchez has therefore failed to present sufficient facts satisfying the first *Strickland* prong. But even if Sanchez has met his burden as to this factor, the Court would nevertheless recommend dismissal because he has not shown he suffered prejudice due to Mr. Nicholson's alleged deficient performance.

### 2.    *Sanchez has not shown that he would have appealed but for Mr. Nicholson's alleged failure to consult.*

Even assuming Sanchez could establish the first *Strickland* prong, he has failed to show that he was prejudiced by any constitutionally deficient performance. In *Flores-Ortega*, the Supreme Court recognized that in many cases, "the performance and prejudice prongs may overlap, [but] they are not in all cases coextensive." 528 U.S. at 486. Thus, "although showing nonfrivolous grounds for appeal may give weight to the contention that the defendant would have appealed," a defendant may also "satisfy the prejudice requirement when there are other substantial reasons to believe that he would have appealed." *Id.*

Sanchez points to no evidence showing that he would have timely appealed but for Mr. Nicholson's alleged failure to consult. As the Fifth Circuit explained in *Bejarano*, "while 'a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal,' this 'evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.'"

---

[16] The Court also notes that, in his § 2255 motion, Sanchez (1) does not admit that he signed the Post-Sentencing Appeal Waiver or explain why he purportedly changed his mind shortly after signing it, and (2) fails to allege that Ms. Hinojosa called Mr. Nicholson (after he signed the waiver) to specifically advise him Sanchez had changed his mind and wanted to appeal. ECF No. 1, at 4–5. The omission of such obvious factual assertions in support of his § 2255 motion, which presumably provides the Court with Sanchez's most favorable account of what he alleges happened, further weighs against his claim that he clearly communicated a desire to appeal to Mr. Nicholson between July 16 and 20, 2018.

751 F.3d at 286 (quoting *Flores-Ortega*, 528 U.S. at 486). Sanchez fails to present any credible evidence he timely conveyed an interest in appealing, much less evidence that he in fact would have appealed. Indeed, Sanchez never attempted to call Mr. Nicholson's office between July 16 and July 20 to inform Mr. Nicholson that he changed his mind and wanted to appeal; instead, Sanchez purportedly relied on Ms. Hinojosa to make the call. Of equal significance is the fact that Sanchez claims he only learned a notice of appeal had not been filed when he "started looking into [his] 2255," i.e., in July 2019. In other words, Sanchez concedes that he made *no inquiry* into the status of an appeal he claims he wanted filed in the summer of 2018 until he filed the instant § 2255 proceeding nearly one year after sentencing. *See id.* at 287 (quoting *Johnson v. United States*, 364 F. App'x 972, 977 (6th Cir. 2010)) (explaining that waiting almost one full year after sentencing to file a § 2255 motion indicates that movant was unlikely to have timely appealed).

Finally, Sanchez signed the Post-Sentencing Appeal Waiver, which stated that after weighing the pros and cons of appealing, he was instructing Mr. Nicholson not to appeal. Government Ex. 2. This signed notice, by itself, forecloses any finding of prejudice in Sanchez's favor. *See Logan*, 2007 WL 2220510, at *3 (reasoning that "even if defense counsel's performance fell below an objective standard of reasonableness," movant could not "show that he suffered prejudice as a result" because he signed a notice of non-appeal acknowledging that he had "discussed [his] case with [his] attorney and . . . decided not to pursue an appeal").

In sum, the evidence shows that Sanchez was unlikely to have timely appealed his criminal sentence. Thus, Sanchez has failed to establish there is a reasonable probability he would have appealed but for Mr. Nicholson's alleged deficiency, and the Court concludes Sanchez has also failed to meet his burden with respect to the second *Strickland* prong.

### V.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court deny Sanchez's claim that Mr. Nicholson provided ineffective assistance of counsel by failing to file a notice of appeal on his behalf.

### VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: April 2, 2020

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

25